UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAUM RESEARCH AND
DEVELOPMENT CO., INC., et al.,

       Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                       Case No. 1:02-cv-674

UNIVERSITY OF MASSACHUSETTS
AT LOWELL,

       Defendant.
_____/

## OPINION

This matter is before the Court on Defendant's <u>Renewed Motion for Judgment as a Matter of Law and, Alternatively, for a New Trial</u>, (dkt. #192), and Defendant's <u>Motion to Dismiss Plaintiffs' Patent Claims</u>, (dkt. #215). As discussed herein, Defendant's renewed motion for judgment as a matter of law and/or new trial is **granted in part and denied in part**, and Defendant's motion to dismiss Plaintiffs' patent claims is **denied**.

In its renewed motion for judgment as a matter of law and/or new trial, Defendant has asserted three bases for relief: (1) Eleventh Amendment immunity, (2) Failure by Plaintiffs to Prove that it suffered a breach of the Licensing Agreement, and (3) Failure by Plaintiff to establish with sufficient certainty its damages. In its motion to dismiss Plaintiffs' patent claims, Defendant again asserts that it enjoys Eleventh Amendment immunity in this matter.

On February 3, 2006, the Court conducted a hearing on Defendant's motion for judgment as a matter of law and/or new trial. Because the argument asserted by Defendant in its motion to dismiss

Plaintiffs' patent claims is identical to the immunity argument asserted in its renewed motion for judgment as a matter of law and/or new trial, an issue explored in depth at hearing, the Court discerns no need for oral argument on this particular motion.

## I.     Defendant has Waived its Eleventh Amendment Immunity

Defendant asserts that Plaintiffs' action must be dismissed on the grounds that the University of Massachusetts enjoys immunity (under the Eleventh Amendment) from suit in federal court.  The Eleventh Amendment provides that

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

This bar to federal jurisdiction also extends to suits against a state by its own citizens. *See Hood v. Tennessee Student Assistance Corporation*, 319 F.3d 755, 760 (6th Cir. 2003) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).  The immunity afforded by the Eleventh Amendment protects the state, as well as its departments and agencies. *See Thiokol Corp. v. Dept. of Treasury, State of Michigan, Revenue Division*, 987 F.2d 376, 381-82 (6th Cir. 1993).  This immunity also extends to individuals representing the state (or its departments or agencies) to the extent that they are acting in their official capacities.  *See Hafer v. Melo*, 502 U.S. 21, 24-25 (1991).

The parties do not appear to dispute that pursuant to Massachusetts law, the University of Massachusetts is an arm of the State for Eleventh Amendment purposes.  The parties' position in this respect is consistent with the conclusions reached by other courts.  *See, e.g., Orell v. Umass Memorial Medical Center, Inc.*, 203 F.Supp.2d 52, 60 (D. Mass. 2002).  Accordingly, unless there exists an

exception thereto, the immunity afforded by the Eleventh Amendment precludes Plaintiff from pursuing this action in federal court.

There exist three exceptions to Eleventh Amendment immunity: (1) a state may waive its immunity by consenting to be sued in federal court, (2) Congress may abrogate the sovereign immunity of the states through statute, and (3) a federal court may entertain a suit seeking prospective injunctive relief against a state official (the *Ex Parte Young* exception). *See Lawson v. Shelby County, Tennessee*, 211 F.3d 331, 334-35 (6th Cir. 2000). As the parties recognize, the latter two exceptions do not apply in this matter. Thus, the relevant question is whether Defendant has waived its Eleventh Amendment sovereign immunity.

Pursuant to Massachusetts law, the University of Massachusetts is authorized to "enter into contracts" and resolve "any and all disagreements involving the same." Mass. Gen. Laws ch. 75, § 14A. In support of their position that Defendant has waived its Eleventh Amendment immunity, Plaintiffs point to a provision in the Confidential License Agreement (the "contract") into which the parties entered. The provision upon which Plaintiffs rely provides as follows:

> III-3. Governing Law. This Agreement will be construed, interpreted and applied according to the laws of the State of Michigan and all parties agree to proper venue and hereby submit to jurisdiction in the appropriate State or Federal Courts of Record sitting in the State of Michigan.

It is well accepted that a state's sovereign immunity is "a personal privilege which it may waive at its pleasure." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 675 (1999). The standard by which a state's alleged waiver is judged, however, is "a stringent one." In general, a state will be deemed to have waived its Eleventh Amendment

immunity only where it (a) voluntarily invokes the jurisdiction of the federal courts, or (b) makes a "clear declaration" that it intends to submit itself to the jurisdiction of the federal courts.

Accordingly, the following actions have been held to not constitute a sufficiently clear declaration of intent and, therefore, to **not** constitute a waiver of sovereign immunity: (1) where a state consents to "suit in the courts of its own creation" (i.e., state courts), (2) where a state articulates its agreement to "sue and be sued," and (3) where state authorized suits against it "in any court of competent jurisdiction." *Id.* Instead, to effectuate a waiver, the state must articulate its "intention to subject itself to suit in *federal* court." *Metz v. Supreme Court of Ohio*, 2002 WL 1941012 at *8 (6th Cir., Aug 19, 2002) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). In other words, waiver of a state's sovereign immunity cannot be implied or construed from the circumstances, but rather must be clearly evidenced by affirmative acts. *See College Savings Bank*, 527 U.S. at 676-77.

Accordingly, the notion that waiver of a state's sovereign immunity must be clearly demonstrated through affirmative conduct is well established. Thus, the question becomes precisely what sort of action constitutes an affirmative declaration by the state that it waives its right to not be subject to suit in federal court. While there is a dearth of authority on this issue, there does exist authority which, in the Court's estimation, leads to the conclusion that the University has waived its Eleventh Amendment immunity in this matter.

In *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), the Court was presented with the question whether a state's act of removing an action from state court to federal court constitutes a waiver of its Eleventh Amendment immunity. *Id.* at 616. There, the plaintiff initiated action in state court against various defendants (entities and individuals all of whom enjoyed immunity under the Eleventh Amendment), who subsequently removed the matter to federal

court. *Id.* After removing the matter to federal court, all the defendants sought to have the matter dismissed on the grounds that the Eleventh Amendment prevented them from being sued in federal court. *Id.* at 616-17.

The Court observed that while the state "was brought involuntarily into the case as a defendant," it had "voluntarily agreed to remove the case to federal court." *Id.* at 620. In so doing, the state "voluntarily invoked the federal court's jurisdiction." Drawing a distinction between states which voluntarily invoke the jurisdiction of the federal courts and those which are involuntarily made a defendant in a federal court action, the Court concluded that, in this particular circumstance, the state had waived its sovereign immunity. *Id.* The Court observed that a contrary rule of law would create "inconsistency and unfairness." *Id.* 622-23. As the present matter does not involve removal, *Lapides* does not, by itself, definitively resolve the present question. At least one court has, however, extended *Lapides* to a circumstance analogous to that presently before the Court.

In *Board of Trustees Sabis International School v. Montgomery*, 205 F.Supp.2d 835 (S.D. Ohio 2002), the court found that sovereign immunity could be waived via contract. In that case, the plaintiff had entered into an agreement with the state board of education to establish a community school. *Id.* at 839-40. The agreement contained the following provision:

> Any dispute involving [SABIS] and the SPONSOR regarding this contract, shall be resolved in the following manner: The parties shall mutually agree upon a fair and impartial arbitrator in an effort to resolve the dispute and reach an amicable agreement. If the parties are unable to agree upon an arbitrator, the Superintendent of Public Instruction shall appoint one; If an agreement cannot be reached within sixty (60) days from the date the arbitrator is appointed, the arbitrator shall render a decision that shall be binding upon both parties and such decision shall be final and nonappealable.

*Id.* at 840.

When disputes later arose between the parties to the agreement, the state refused to abide by the agreement's arbitration clause, asserting that such would constitute a waiver of its sovereign immunity. *Id.* at 841-42. The plaintiff subsequently initiated legal action in federal district court, in part, because the state refused to submit the matter to binding arbitration. *Id.* The district court concluded that inclusion in the contract of the binding arbitration clause constituted a waiver of the state's sovereign immunity. *Id.* at 845-46. Relying on *Lapides*, the court specifically found that:

> the State's insertion of a binding arbitration clause into the Sponsorship Contract waives the State's Eleventh Amendment immunity, and constitutes consent to be sued in federal court. Similar to the act of removal, which is litigation conduct, the insertion of the binding arbitration clause into the contract constitutes *pre*-litigation conduct, or action undertaken in anticipation of future disputes that might result in litigation. As the Supreme Court stated with respect to certain litigation conduct, an interpretation of the Eleventh Amendment that would allow the State to engage in the *pre*-litigation act of drafting a binding arbitration clause into a contract without waiving sovereign immunity would rest upon the State's mere 'preference or desire.' Such an interpretation of the Eleventh Amendment would allow the State selectively to hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives. In other words, an interpretation of the Eleventh Amendment that allows the State selectively to waive sovereign immunity encourages forum shopping by the State, and fails to produce consistent and fair results, which is precisely the opposite of what the Supreme Court mandated in *Lapides*. Therefore, the Court concludes that the State's pre-litigation act of inserting a binding arbitration provision into the contract constitutes a waiver of the State's Eleventh Amendment immunity.

*Id.* at 846.

Unfortunately, the *Sabis* court did not articulate the basis for its conclusion. Presumably, it is premised upon the primary role that the federal courts play in arbitration matters. Pursuant to the Federal Arbitration Act, the federal district courts have jurisdiction over claims that a party to an agreement refuses to abide by an agreement to arbitrate a particular dispute. *See* 9 U.S.C. § 4; *United*

*States Fire Ins. Co. v. National Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996). To the extent, therefore, that the plaintiffs were seeking to enforce the arbitration clause, jurisdiction rested in the federal court. Thus, the *Sabis* court seems to have concluded that inherent in the agreement to arbitrate was the notion that any disputes regarding the enforceability thereof fell within the jurisdiction of the federal courts, therefore, by agreeing to the arbitration clause the state was agreeing to litigate in a federal forum (at least with respect to certain issue relating to arbitration).

While it can perhaps be argued that the result the *Sabis* court reached relies upon inference and conjecture (rather than an unequivocal statement of intent), the concern underlying the court's decision (quoted above) appears to be valid and applicable in the present matter. Moreover, unlike the arbitration provision in *Sabis*, the provision presently at issue is unequivocal. The "governing law" provision quoted above provides that "all parties agree to proper venue and hereby submit to jurisdiction in the appropriate State or Federal Courts of Record sitting in the State of Michigan."

Just as the arbitration clause in *Sabis* constituted a "pre-litigation" tactic on the state's part, inclusion of the governing law provision in this matter is no different. By agreeing to this provision, Defendant affirmatively agreed to resolve in federal court any disputes that may arise. Permitting Defendant to now invoke sovereign immunity would permit it to "selectively to hide behind the cloak of sovereign immunity when doing so would serve its litigation objectives," the very concern expressed by the *Lapides* and *Sabis* courts.

Accordingly, the Court finds that Defendant has waived its Eleventh Amendment immunity in this matter.

## II.     Did Plaintiff Establish that Defendant Breached the Licensing Agreement

In their First Amended Complaint, Plaintiffs asserted a claim for breach of contract based on the following allegations: (1) Defendant used the Baum Hitting Machine to perform unlicensed testing, (2) Defendant improperly modified the protocol used by the Baum Hitting Machine, and (3) Defendant improperly modified the Baum Hitting Machine itself. (Dkt. #153). Defendant asserts that Plaintiff failed to establish (under any of these three theories) that Defendant breached the license agreement. Accordingly, Defendant moves for judgment as a matter of law (pursuant to Fed. R. Civ. P. 50) as well as a new trial (pursuant to Fed. R. Civ. P. 59(a)).

The standard for judgment as a matter of law under Rule 50 "mirrors" the Rule 56 standard for summary judgment "such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

When evaluating a motion for new trial under Rule 59, the Court "should indulge all presumptions in favor of the validity of the jury's verdict." *Tezak v. Montgomery Ward & Co., Inc.*, 33 Fed. Appx. 172, 176 (6th Cir., Mar. 28, 2002). Moreover, "[t]he simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence." *Id.* As is well recognized, the "jury's verdict should be accepted if it is one which could reasonably have been reached." *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005).

When evaluated pursuant to the appropriate standards, the Court concludes that Plaintiff introduced sufficient evidence to permit a reasonable juror to find that Defendant used the Baum Hitting Machine to perform unlicensed testing and improperly modified the protocol used with the Baum Hitting Machine. The Court also finds that Plaintiff introduced sufficient evidence to permit a reasonable juror

to find that Defendant did not cure its breach of the license agreement. However, the Court concludes that Plaintiff failed to introduce sufficient evidence to permit a reasonable juror to find that Defendant improperly modified the Baum Hitting Machine itself.

### III.        Remittitur

Defendant alternatively argues that if it is not entitled to a new trial on the issue of liability it is entitled to a remittitur on the grounds that the jury's verdict was "wholly incomprehensible."

Since this is a diversity action, the first question that arises is what body of law governs Defendant's motion for remittitur. The parties have not briefed this question, but it appears that the Court must look to state law to assess the merits of Defendant's request. *See Imbrogno v. Chamberlin*, 89 F.3d 87, 90 (2d Cir. 1996) ("in deciding remittitur motions in diversity cases, federal courts apply federal procedural standards and state substantive law"); *Jones v. Wittenberg University*, 534 F.2d 1203, 1212 (6th Cir. 1976) ("the appealability of an order of remittitur is determined by state law").

The license agreement at issue in this matter expressly states that it "will be construed, interpreted and applied according to the laws of the State of Michigan." The parties having agreed that Michigan substantive law shall be applied in this matter, the Court shall assess Defendant's motion for remittitur by reference to Michigan law.

To grant Defendant's motion the Court must conclude that the jury's verdict as to damages was "excessive." *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 399 (Mich. 2004). The term "excessive" has been defined as "going beyond the usual, necessary, or proper limit or degree; characterized by excess." *Id.* In other words, the Court must determine "whether the jury verdict is for an amount greater than the evidence can support." *Seabrook v. Delta Financial Corp.*, 2000 WL

33406658 at *13 (Mich. Ct. App., Oct. 3, 2000) (quoting *McLemore v. Detroit Receiving Hosp. & Univ. Medical Center*, 493 N.W.2d 441 (Mich. Ct. App. 1992)).

In making this determination, the Court must "view the evidence in a light most favorable to the plaintiff and give the plaintiff the benefit of every reasonable inference." *Dockett v. Kramer Entertainment Agency, Inc.*, 2005 WL 433597 at *2 (Mich. Ct. App., Feb. 24, 2005). If a review of the evidence reveals that "reasonable people could differ, the question is properly left to the trier of fact," *id.*, because "the authority to measure damages. . .inheres in the jury's role as trier of fact." *Gilbert*, 685 N.W.2d at 399.

However, a party asserting a claim "has the burden of proving its damages with reasonable certainty" and "damages based on speculation or conjecture are not recoverable." *Metro Car Co. v. Hemker*, 2005 WL 3556115 at *2 (Mich. Ct. App., Dec. 29, 2005) (quoting *Berrios v. Miles, Inc.*, 574 N.W.2d 677 (Mich. Ct. App. 1997)). While absolute certainty is not required, Plaintiff must nonetheless establish a "reasonable basis" for its damages computation. *Dockett*, 2005 WL 433597 at *3 (citing *Hoffman v. Auto Club Ins. Ass'n.*, 535 N.W.2d 529 (Mich. Ct. App. 1995)).

After reviewing the relevant evidence pursuant to the above standard, the Court concludes that there does not exist a "reasonable basis" for the jury's damages award in this matter and, furthermore, that the jury awarded Plaintiffs an amount in excess of what the evidence supports.

Plaintiffs sought to recover damages for lost profits they claim to have suffered as a result of Defendant's improper use of the Baum Hitting Machine. Despite the complexity inherent in any such lost profits calculation, Plaintiffs estimated lost profits by employing an overly simplistic model. Plaintiffs asserted that they were entitled to five thousand dollars ($5,000) for each day that Defendant

used the Baum Hitting Machine, regardless of the purpose for which the machine was used. This method of calculation is fatally flawed and fails to support the jury's damages award.

Plaintiffs' expert witness on the issue of damages, Paul Taylor, testified that after analyzing Plaintiffs' financial statements and "some Baum sales invoices" he concluded that Plaintiffs were charging five thousand dollars ($5,000) a day "for Baum Hitting Machine testing." (Trial Transcript, Sep. 9, 2005, 162, 177). Taylor testified that during the relevant time period Defendant had used the Baum Hitting Machine on 907 different days. *Id.* at 164-68. Taylor then multiplied the number of days which the machine was allegedly used (907) by five thousand, thus arriving at his estimate of Plaintiffs' lost revenue, 4.53 million dollars. *Id.* at 178, 182-83. From this amount, Taylor subtracted the estimated expenses which Plaintiffs would have incurred in order to generate such revenue. *Id.* at 178-83. Taylor estimated that Plaintiffs would have incurred $721,184 in such expenses, resulting in alleged lost profits of 3.8 million dollars. *Id.* at 183.

On cross-examination, Taylor acknowledged that certain types of testing which Defendant conducted with the Baum Hitting Machine (e.g., final certification testing) could not have deprived Plaintiffs of *any* profits because Plaintiffs were not authorized to perform such testing. (Trial Transcript, Sep. 13, 2005, 117-21, 125-26). Taylor further testified, however, that he made no attempt to determine whether the specific testing allegedly performed by Defendant in violation of the License Agreement was of a nature that may have deprived Plaintiffs of profits or was instead the type of testing which Plaintiffs were not even authorized to perform. *Id.* Instead, Taylor simply assumed that any testing which Defendant conducted during the relevant time period was of a type which Plaintiffs could have performed, thus depriving Plaintiffs of profits. *Id.* at 125-26. This assumption enjoys no support in the record.

Taylor also acknowledged on cross-examination that he did not, as part of his "lost profits" estimation, make any attempt to determine whether any of the testing which Defendant performed during the relevant time period could have instead been performed by the bat manufacturers themselves. *Id.* at 94. Taylor simply assumed that any and all testing which Defendant performed would have instead been performed by Plaintiffs at the rate of five thousand dollars ($5,000) per day. This assumption likewise enjoys no support in the record.

As noted above, Taylor testified that Defendant used the hitting machine (in violation of the License Agreement) on 907 separate days. Taylor further testified that during these 907 days the hitting machine executed 37,500 bat swings. (Trial Testimony, Sep. 9, 2005, 165-68). In other words, on an "average" day the hitting machine executed more than 41 bat swings. However, as Taylor also acknowledged, on several of these days the hitting machine was used to perform only one or two bat swings. (Trial Testimony, Sep. 13, 2005, 114-17). Taylor offered no evidence that such "tests" were of a nature as to command a fee of five thousand dollars.

To put it quite simply, while Taylor claimed that his analysis was designed to calculate the revenue which Plaintiffs allegedly lost because of Defendant's breach of the License Agreement, Taylor, in fact, simply calculated Plaintiffs' alleged lost profits as if the License Agreement contained a liquidated damages provision which entitled Plaintiffs to receive five thousand dollars ($5,000) for each day that the hitting machine was used, regardless of the extent of the use or the purpose thereof. The License Agreement contains no such provision and the discussion above reveals the many deficiencies in Taylor's analysis.

Accordingly, for the reasons articulated herein, the Court finds that Plaintiffs have failed to establish their damages with reasonable certainty and that there does not exist a "reasonable basis" for the jury's damages award in this matter.

Having found that the damage award in this matter is excessive and not sufficiently supported, the Court must determine the appropriate remedy. Under Michigan law, "a grant of a new trial limited to the issue of damages is allowed where liability is clear." *Denha v. Jacob*, 446 N.W.2d 303, 305-06 (Mich. Ct. App., 1989); *see also*, *Reddy v. Sweetland*, 2001 WL 704394 at *3 (Mich. Ct. App., Mar. 23, 2001) (same).

As discussed above, Plaintiffs clearly introduced evidence from which a jury could conclude that Defendant breached the License Agreement. However, while the jury's damage award is not supported by the evidence, the Court is unable to determine what amount of damages is appropriate. Any attempt to discern Plaintiffs' damages would, at this juncture, constitute the very sort of speculation which is prohibited by Michigan law. Accordingly, the Court grants Defendant's motion for a new trial, but only as to the issue of the amount of damages (if any) Plaintiffs suffered as a result of Defendant's breach of the License Agreement.

## CONCLUSION

For the reasons discussed herein, the Court finds that Defendant has waived its Eleventh Amendment immunity from suit in federal court. The Court finds that Plaintiffs presented sufficient evidence at trial to establish that Defendant used the Baum Hitting Machine to perform unlicensed testing and improperly modified the protocol used with the Baum Hitting Machine. The Court also finds that Plaintiffs introduced sufficient evidence to permit a reasonable juror to find that Defendant did not

cure its breach of the license agreement.  The Court further finds that Plaintiffs failed to introduce sufficient evidence to permit a reasonable juror to find that Defendant improperly modified the Baum Hitting Machine.  Finally, the Court finds that Plaintiffs have failed to establish their damages with reasonable certainty and that there does not exist a "reasonable basis" for the jury's damages award.

Accordingly, <u>Defendant University of Massachusetts at Lowell's Renewed Motion for Judgment as a Matter of Law and, Alternatively, for a New Trial</u>, (dkt. #192), is **granted in part and denied in part**, and <u>Defendant University of Massachusetts at Lowell's Motion to Dismiss Plaintiffs' Patent Claims</u>, (dkt. #215), is **denied**.  Accordingly, Defendant is entitled to a new trial limited to the issue of the amount of damages (if any) to which Plaintiffs are entitled as a result of Defendant's breach of the License Agreement at issue in this matter.  An Order consistent with this Opinion will enter.

Date:  February 24, 2006                           /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge