UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BAUM RESEARCH AND
DEVELOPMENT CO., INC., et al.,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.                                                       Case No. 1:02-cv-674

UNIVERSITY OF MASSACHUSETTS
AT LOWELL,

        Defendant.
_____/


**OPINION**

        This matter is before the Court pursuant to Plaintiffs' Motion for Summary Judgment of Infringement and Non-Invalidity of U.S. Patent 5,988,861. (Dkt. #323). The background and procedural history of this case are well known to the Court and parties and need not be reiterated herein, except to the extent relevant to the resolution of the present motion. For the reasons discussed below, Plaintiffs' motion is **granted in part and denied in part**.

        In their motion, Plaintiffs assert that they are entitled to summary judgment on their claim that Defendant infringed the '861 Patent. Plaintiffs also assert that they are entitled to summary judgment as to Defendant's counterclaim that the '861 Patent is invalid. Finally, Plaintiffs assert that they are entitled to summary judgment as to the following affirmative defenses asserted by Defendant: (1) first sale doctrine, (2) patent misuse, and (3) unenforceability.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.        Infringement of the '861 Patent**

Plaintiffs assert that they are entitled to summary judgment on their claim that Defendant infringed the '861 Patent. Specifically, Plaintiffs claim that "[t]he Court's *Markman* ruling has now resolved any issue of fact that UMass raised regarding non-infringement of at least some claims of the '861 Patent." The Court finds Plaintiffs' argument untenable in that Plaintiffs appear to be asserting that the Court's resolution of a legal issue (e.g., the interpretation of the patent's claims) somehow rendered moot the parties' factual disputes.

As the parties are well aware, while the interpretation of a patent's claims is a legal matter for the Court to resolve, an assessment of whether there has been an infringement of those claims is a

factual matter for, in this case, the jury. *See, e.g., Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002); *SSIH Equipment S.A. v. United States International Trade Commission*, 718 F.2d 365, 376 (Fed. Cir. 1983). While the Court may have interpreted the relevant claims in a manner more to Plaintiffs' liking, such does not eliminate or resolve the factual disputes which exist relative to this claim. The Court notes that there exists at least one factual dispute which makes summary judgment at this juncture inappropriate.

Several of the claims of the '861 Patent indicate that the BHM will "construct a database" of various performance characteristics. Defendant has submitted an affidavit from Keith Koenig, Ph.D. who asserts that his inspection of the UMass BHM reveals that it does not construct a database as required by the '861 Patent. Plaintiffs claim that Dr. Koenig's assertion "has no weight" because such is allegedly premised upon Defendant's proposed (and ultimately rejected) construction of the relevant claims. The Court, however, does not interpret Dr. Koenig's declaration so narrowly. Dr. Koenig's assertion is based upon his inspection of the UMass BHM and is dated more than two months after the Court issued its claim construction Opinion.

In sum, Plaintiffs have failed to demonstrate that there does not exist any genuine issue of material fact concerning its claim that Defendant infringed the '861 Patent. The Court, therefore, denies this aspect of Plaintiffs' motion for summary judgment.

**II.        UMass' Defenses**

Defendant has asserted various affirmative defenses in this matter. Plaintiffs assert that they are entitled to summary judgment as to several of these affirmative defenses. Specifically, Plaintiffs assert that they are entitled to summary judgment as to the following defenses advanced by UMass: (1)

indefiniteness; (2) best mode; (3) enablement; (4) misuse; (5) exhaustion; and (6) inequitable conduct.[1] (Dkt. #326).

### A.   Indefiniteness

Federal patent law requires that every patent contain a specification that concludes "with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶¶ 2.  This is referred to as the "definiteness requirement."  *Crown Operations International, LTD. v. Solutia Inc.*, 289 F.3d 1367, 1378 n.5 (Fed. Cir. 2002).  The definiteness requirement "is a legal requirement, based on the court's role as construer of patent claims."  *Id.*  In other words, a determination of whether a patent's claims satisfy the definiteness requirement is a question for the court to resolve during claim construction.  *See*, *e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims").  The Court addressed the definiteness requirement at length in its claim construction Opinion and Order.  (Dkt. #315).  This issue has already been resolved by the Court's *Markman* ruling. Thus, it is not clear what further relief Plaintiffs seek on this issue.

### B.   Enablement

Defendants assert that the specification of the '861 Patent is insufficient to enable the Patent's first claim.  The first claim of the '861 Patent refers to a "sports-related testing system" with

---

[1] In their reply brief, (dkt. #337), Plaintiffs make reference to UMass' public disclosure defense, asserting that such does not form a basis to deny Plaintiffs' motion for summary judgment. In their motion for summary judgment, however, Plaintiffs neither discussed the public disclosure issue nor asserted that they were entitled to summary judgment as to this defense. Because Plaintiffs did not raise this issue in their motion, the Court need not address the issue.

an object delivery module which places "the object into the path of the implement along a delivery path such that the implement is able to strike the object, causing it to travel along a flight path." ('861 Patent, col. 8, lines 50-61). The enablement requirement derives from the following provision of the Patent Act:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms **as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same**, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112 ¶ 1 (emphasis added).

To satisfy this requirement, the patent's specification "must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993); *see also*, *Genentech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *Wright*, 999 F.2d at 1561). Whether the specification satisfies this requirement "is determined as of the date that the patent application was first filed." *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999).

While the specification must enable those skilled in the art to make and use the invention, it need not "reinvent and describe the wheel." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999). Thus, the specification may "resort to material outside the specification in order to satisfy the enablement portion of the statute because it makes no sense to encumber the specification of a patent with all the knowledge of the past concerning how to make and use the claimed invention." *Id.* Enablement is not precluded by "the necessity for some experimentation. . .[h]owever, experimentation needed to practice the invention must not be undue experimentation." *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988). As the *Wands* court recognized, "[t]he key word is 'undue,' not 'experimentation.'" *Id.* at 737.

Whether undue experimentation is needed "is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *Id.* The factors to be considered in assessing whether a patent's disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance presented; (3) the presence or absence of working examples; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims. *Id.*; *see also*, *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1327 (Fed. Cir. 2007) (quoting *Wands*, 858 F.2d at 737).

As noted above, the first claim of the '861 Patent refers to a "sports-related testing system" with an object delivery module which places "the object into the path of the implement along a delivery path such that the implement is able to strike the object, causing it to travel along a flight path." ('861 Patent, col. 8, lines 50-61). Baum has testified that for the BHM to function properly, the ball and bat must perform a "square hit," in which the "center line" of the bat strikes the "center line" of the ball causing the ball "to fly in a predetermined path." (Dkt. #335, Exhibit 4 at 215). Baum testified that this was accomplished by programming the servo motors. (Dkt. #335, Exhibit 4 at 216). Baum further stated that "[w]e had to program the servo motors to start and stop in a particular fashion to make sure the impact position was kept, as you want to call it, sacred." (Dkt. #335, Exhibit 4 at 216). Greg Aldrich, the individual who programmed the servo motors, testified that properly programming the servo motors was "a trial and error process" that took "six to eight months." (Dkt. #335, Exhibit 5 at 73-74).

The '861 Patent contains no programming code or other instruction as to how to program or coordinate the servo motors to ensure that the bat and ball were struck in the "sacred" impact position.

Plaintiffs offer no evidence on this issue, but instead simply reiterate that "there is nothing to take to the jury." The Court disagrees. The absence of instruction in the '861 Patent coupled with the testimonial evidence identified immediately above, certainly raises a legitimate question as to whether the '861 Patent is sufficient to "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." The Court, therefore, denies Plaintiffs' motion as to this particular defense.

### C.     Best Mode

Defendant asserts that the '861 Patent fails to disclose the best mode for (1) striking the ball with the bat, (2) constructing the machine, or (3) constructing the database. While the enablement and the best mode requirement derive from the same provision of the Patent Act, they are distinct requirements directed at different concerns. The best mode requirement derives from the following:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and **shall set forth the best mode contemplated by the inventor of carrying out his invention**.

35 U.S.C. § 112 ¶ 1 (emphasis added).

The enablement requirement is concerned with "placing the subject matter of the claims generally in the possession of the public." *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1532 (Fed. Cir. 1987). The best mode requirement, however, is concerned with whether the applicant "develops specific instrumentalities or techniques which are recognized at the time of filing as the best way of carrying out the invention." If so, the best mode requirement obligates the applicant "to disclose that information to the public as well." As the *Spectra-Physics* court observed:

> The essence of [the enablement requirement] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. *Separate and distinct* from [enablement] is [the best mode requirement], the essence of which requires the inventor to disclose the best mode *contemplated by him,* as of the time he executes the application, of carrying out his invention. Manifestly, the sole purpose of this latter requirement is to restrain inventors from applying for patents while at the same time concealing from the public preferred embodiments of their inventions which they have in fact conceived.
>
> ...The question of whether an inventor has or has not disclosed what he feels is his best mode is, however, a question separate and distinct from the question of the *sufficiency* of his disclosure to satisfy the requirements of [enablement].

*Id.* at 1532 (citation omitted).

When assessing whether the best mode requirement has been satisfied, one must "first determine whether [the applicant] subjectively considered a particular mode of practicing the invention to be superior to all other embodiments at the time the [patent] application was filed." *Go Medical Industries Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1271 (Fed. Cir. 2006). Because the best mode requirement is concerned with the best mode "contemplated by the inventor," only evidence of "concealment," intentional or accidental, is considered. *Spectra-Physics*, 827 F.2d at 1535. The specificity of disclosure required to comply with the best mode requirement "must be determined by the knowledge of facts within the possession of the inventor at the time of filing the application." *Id.*

As noted above, Baum and Aldrich engaged in a lengthy trial and error process to ensure that the bat and ball were struck in the "sacred" impact position. Defendant asserts that this evidence reveals that Baum "considered 'a particular mode of practicing the invention to be superior' to others." According to Defendant, Baum was required to disclose this superior mode in the Patent. Plaintiffs have submitted no evidence to refute or counter Defendant's argument, but instead assert that Defendant's

claim must fail because UMass successfully operated the UMass BHM for several years. The Court disagrees. As the statutory language quoted above reveals, the best mode requirement (like the enablement requirement) is concerned with whether the public can make AND use (as opposed to make OR use) the patented device.

In light of the evidence submitted by Defendant and the absence of evidence submitted by Plaintiffs, the Court finds that Plaintiffs have failed to demonstrate the absence of a genuine factual issue as to this particular issue. The Court, therefore, denies this aspect of Plaintiffs' motion.

D. Exhaustion and Misuse

UMass has asserted the defenses of exhaustion and misuse. Plaintiffs argue that they are entitled to summary judgment as to these particular defenses. The Court agrees.

The "unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of the device thereafter." *B. Braun Medical, Inc. v. Abbott Laboratories*, 124 F.3d 1419, 1426 (Fed. Cir. 1997). The theory underlying this rule is that "in such a transaction, the patentee has bargained for, and received, an amount equal to the full value of the goods." The exhaustion doctrine, however, does not apply "to an expressly conditional sale or license." In such a circumstance, "it is more reasonable to infer that the parties negotiated a price that reflects only the value of the 'use' rights conferred by the patentee." Accordingly, "express conditions accompanying the sale or license of a patented product are generally upheld."

Any such contractual conditions are subject to any applicable law, including "equitable considerations such as patent misuse." The doctrine of patent misuse is "born from the equitable doctrine of unclean hands." It is a "method of limiting abuse of patent rights separate from the anti-trust

laws." *Id.* This doctrine arose to "restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992). The public policy implicated by the patent misuse doctrine is to "prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." *Id.* The key inquiry is whether "by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). A finding of misuse does not invalidate the patent, but instead "renders the patent unenforceable until the misuse is purged." *Id.*

### 1. Exhaustion

Defendant notes that pursuant to the terms of the Confidential License Agreement, if the Agreement is terminated, "UMass would have the right to keep the machine but its right to use it would cease." Defendant asserts that "[t]his vanishing right to a purchased machine is the essence of the exhaustion doctrine." Defendant's argument appears to be that it did not *license* the UMass BHM, in which case the doctrine of exhaustion would not apply, but rather that it *purchased* the UMass BHM, implicating the exhaustion doctrine.

While it may seem odd that Baum would permit Defendant to keep (but not use) the UMass BHM in the event that the license agreement is terminated, the Court is not persuaded.[2] First, the Court notes that the parties executed a *license* agreement, which as noted above does not implicate

---

[2] One possible explanation is that Plaintiffs did not want to bear the expense of returning the machine to Michigan if the license was breached.

the exhaustion doctrine. Furthermore, regardless of whether the parties refer to the transaction as a sale or a license, in the Court's estimation the more relevant question is whether the amount paid by Defendant represented the "full value" of the UMass BHM or simply the value of the "use" rights conferred by Baum. Defendant has failed to present any evidence supporting the theory that the amount it paid to Baum for the UMass BHM represented anything other than the value of the right to "use" the machine pursuant to the terms of the license agreement. Accordingly, the Court grants Plaintiffs' motion for summary judgment as to this particular issue.

2. Misuse

In support of its argument that Plaintiffs misused the patents in suit, Defendant asserts that the license agreement authorized Baum to revoke the license if the NCAA modified its bat certification protocol. Defendant also relies upon testimony from Baum in which he allegedly "freely admits that the license agreement with UMass and the protocol for certifying bats were intended to exclude aluminum bats from the baseball bat market and thus improve Baum's sales of his own bats." According to Defendant, this constitutes sufficient evidence to permit it to pursue its patent misuse defense at trial. The Court disagrees for two reasons.

First, the issue is not whether Plaintiffs have acted to obtain some market benefit. Rather, the question is whether Plaintiffs have *used the patents in suit* to gain an improper market benefit. Defendant's patent misuse argument is based on matters beyond the scope of the patents in suit. As Plaintiffs correctly assert, the license agreement encompasses much more than simply the use of the UMass BHM. For example, the license agreement addresses additional matters such as the bat testing protocol and certain trade secrets, matters which are not within the scope of the patents in suit. Thus,

while Defendant *may* have presented evidence that Plaintiffs have utilized the license agreement to gain an unfair market advantage, Defendant has yet to present evidence that Plaintiffs used the patents in suit "to obtain market benefit beyond that which inheres in the statutory patent right."

Furthermore, while Defendant has identified evidence that may support the argument that Plaintiffs *attempted* to obtain an unfair market benefit, Defendant has submitted no evidence to support the argument that Plaintiffs actually obtained any such benefit. In other words, while there may exist a genuine factual issue as to whether Plaintiffs *attempted* to misuse the '861 Patent, Defendant has submitted no evidence supporting its argument that Plaintiffs actually succeeded in any such attempt. As previously noted, the purpose underlying the patent misuse doctrine is to "prevent a patentee from using the patent to obtain market benefit beyond that which inheres in the statutory patent right." In other words, the patent misuse doctrine applies only where the patent holder *obtains* an unfair market benefit. In the absence of evidence that Plaintiffs actually obtained any such benefit, the Court grants Plaintiffs' motion for summary judgment as to this particular issue.

E.  Inequitable Conduct

In its Amended Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, (dkt. #280), Defendant asserted the affirmative defense that the '200 Patent was unenforceable due to inequitable conduct committed before the United States Patent and Trademark Office. Plaintiffs assert that because Defendant has not produced evidence that the '861 Patent was obtained inequitably, Plaintiffs are "entitled to summary judgment that the '861 Patent is enforceable against UMass."

Defendant responds that it has not produced any evidence of inequitable conduct concerning the '861 Patent because Plaintiffs only recently disclosed evidence of such. Even assuming this is the case, the Court notes that Defendant has not amended or supplemented its pleadings to assert the affirmative defense that the '861 Patent is unenforceable due to inequitable conduct. In this respect, the Court notes that none of the general and all-encompassing defenses articulated by UMass are sufficient to place this particular issue before the Court, as Defendant must instead plead the affirmative defense of inequitable conduct with particularity. *See Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). The Court concludes, therefore, that the issue of whether Plaintiffs are "entitled to summary judgment that the '861 Patent is enforceable against UMass" is not properly before the Court. Accordingly, this aspect of Plaintiffs' motion is denied without prejudice.

**CONCLUSION**

For the reasons articulated herein, Plaintiffs' Motion for Summary Judgment of Infringement and Non-Invalidity of U.S. Patent 5,988,861, (dkt. #323), is **granted in part and denied in part**.

Specifically, the Court denies Plaintiffs' motion for summary judgment as to their claim that Defendant infringed the '861 Patent. The Court denies Plaintiffs' motion for summary judgment as to the defenses of enablement and best mode asserted by UMass. The Court grants Plaintiffs' motion for summary judgment as to the defenses of exhaustion and misuse. As for Plaintiffs' claim that it is entitled to summary judgment on the issue of indefiniteness, the Court denies as moot any such claim. Finally, the Court denies without prejudice Plaintiffs' motion for summary judgment as to the defense that the '861 Patent is unenforceable due to inequitable conduct.

An Order consistent with this Opinion will enter.


Date:  February 20, 2009                   /s/ Ellen S. Carmody
                                          ELLEN S. CARMODY
                                          United States Magistrate Judge