UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BAUM RESEARCH AND
DEVELOPMENT CO., INC., et al.,

        Plaintiff,                             Hon. Ellen S. Carmody

v.                                          Case No. 1:02-cv-674

UNIVERSITY OF MASSACHUSETTS
AT LOWELL,

        Defendant.
_____/


**OPINION AND ORDER**

      This matter is before the Court on the following motions: Defendant's Motions for

Summary Judgment, (dkt. #324 and 327); Plaintiffs' Motions in Limine, (dkt. #347 and 348);

Defendant's Motions in Limine, (dkt. #351, 353, and 359); Defendant's Motion for Verdict on Special

Questions, (dkt. #376); Defendant's Motion for Exclusion, (dkt. #384); Plaintiffs' Motion to Try

Representative Claims, (dkt. #395); Plaintiffs' Motion for Directed Verdict, (dkt. #428); Defendant's

Motions for Directed Verdict, (dkt. #436 and 437); Defendant's Motion to Dismiss, (dkt. #446); and

Plaintiffs' Motion for Entry of Final Judgment and Assessment of Costs, Prejudgment Interest, Treble

Damages and Attorneys Fees, (dkt. #464).  These motions are resolved as indicated below.


**I.**        **Defendant's Motions for Summary Judgment (Dkt. #324 and 327)**

      Defendant moved for summary judgment on the ground that it was entitled to sovereign

immunity.  (Dkt. #324).  This motion is **denied**, for reasons stated on the record during the Court's

January 20, 2009 hearing. Defendant also moved for summary judgment, asserting that Plaintiff Baum Research and Development lacked standing to assert any claim for patent infringement. (Dkt. #327). This motion is **granted**, for reasons stated on the record during the Court's January 20, 2009 hearing.


**II.        Plaintiffs' Motions in Limine  (Dkt. #347 and 348)**

Plaintiffs moved to prevent Defendant from calling Patrick Drane as an expert witness. (Dkt. #347). This motion is **granted**, for reasons previously stated on the record. Plaintiffs also moved to bar Defendant from presenting evidence relating to the Weyerhaeuser machine as prior art to Plaintiff Baum's patents. (Dkt. #348). This motion is **granted in part and denied in part**, for reasons previously stated on the record.


**III.        Defendant's Motions in Limine  (Dkt. #351, 353, and 359)**

Defendant moved to limit the evidence on which Plaintiff could rely to demonstrate that his patents had been infringed. (Dkt. #351). Specifically, Defendant requested that Plaintiff be limited to evidence concerning the Baum Hitting Machine which Plaintiff Baum sold to Defendant. This motion is **denied**, for reasons previously stated on the record.

Defendant moved to limit the extent to which the parties could, in the second trial, refer to the initial trial. (Dkt. #353). This motion is **granted in part and denied in part**, for reasons previously stated on the record. Defendant also moved to preclude Plaintiff from introducing evidence of patent infringement under the doctrine of equivalents. (Dkt. #359). This motion is **granted**, for reasons previously stated on the record.

**IV.**     **Defendant's Motion for Verdict on Special Questions  (Dkt. #376)**

Defendant moved the Court to "adopt a verdict on special questions pursuant to Fed. R. Civ. P. 49(a) to simplify the jury's fact-finding."  (Dkt. #376).  This motion is **granted in part and denied in part**, for reasons previously stated on the record.


**V.**     **Defendant's Motion for Exclusion  (Dkt. #384)**

Defendant moved for an order that the witnesses in this matter "be excluded so that they cannot hear the testimony of other witnesses." (Dkt. #384).  This motion is **granted**, as previously stated on the record.


**VI.**     **Plaintiffs' Motion to Try Representative Claims  (Dkt. #395)**

Plaintiffs requested that its patent infringement claims be tried by reference to certain representative claims articulated in the patent. (Dkt. #395).  This motion is **granted**, as previously stated on the record.


**VII.**     **Plaintiffs' Motion for Directed Verdict  (Dkt. #428)**

Prior to the close of proofs, Plaintiffs moved for directed verdict as to Defendant's counterclaim that Plaintiff Baum derived claims 23-26 of the '861 patent from Larry Fallon.  (Dkt. #428).  As Plaintiffs conceded at hearing, this motion was rendered moot by the jury's verdict. Accordingly, this motion is **denied as moot**.

**VIII.**        **Defendant's Motions for Directed Verdict  (Dkt. #436 and 437)**

At the close of Plaintiffs' case-in-chief, Defendant moved for directed verdict pursuant to Federal Rule of Civil Procedure 50(a).  (Dkt. #436).  Defendant renewed this motion, asserting the same issues, at the close of its case-in-chief.  (Dkt. #437).  As articulated below, Defendant's motions are **denied**.

The party moving for relief under Rule 50(a) is entitled to judgment as a matter of law if the nonmoving party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a); *see also, Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002).  When resolving a Rule 50(a) motion, the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Bell*, 308 F.3d at 601.

Defendant seeks judgment as a matter of law on the following issues: (1) Plaintiffs' theory of contract damages is speculative; (2) Plaintiffs' theory of patent damages is speculative; (3) Defendant's hitting machine does not infringe the '861 patent; (4) claim 23 of the '861 patent is indefinite or, in the alternative, not infringed; (5) the '861 patent is invalid because Plaintiffs derived the invention of claim 23 of the '861 patent from Larry Fallon; (6) claims 6 and 23 of the '861 patent are invalid because Plaintiffs failed to disclose the best mode to make and use each claim; and (7) Plaintiffs have failed to prove willful patent infringement.

The Court held a hearing on Defendant's motions on July 6, 2009.  As to issues 1-6 identified immediately above, the Court denied Defendant's motion on the ground that the evidence presented at trial was sufficient for a reasonable juror to find for Plaintiffs.  While the evidence may very well have supported a jury verdict on these issues in Defendant's favor, the Court is not permitted to act

as a thirteenth juror. Because the evidence presented at trial satisfied the relevant standard, submission of these matters to the jury for resolution was appropriate. Accordingly, Defendant's motions for directed verdict as to these particular issues are **denied**.

The Court took under advisement those portion of Defendant's motions in which Defendant asserts that it is entitled to directed verdict on the issue of whether Defendant willfully infringed Plaintiff Baum's patent. Having considered the matter, the Court concludes that the evidence presented at trial was likewise sufficient for a reasonable juror to find for Plaintiff on this issue.

To prevail on the claim that Defendant engaged in willful patent infringement, Plaintiffs must show by clear and convincing evidence that Defendant "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Cohesive Technologies, Inc. v. Waters Corp.*, 543 F.3d 1351, 1374 (Fed. Cir. 2008) (quoting *In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed Cir. 2007) (en banc)). Plaintiffs must also show that this risk "was either known or so obvious that it should have been known to the accused infringer." *Cohesive Technologies, Inc.*, 543 F.3d at 1374 (quoting *In re Seagate*, 497 F.3d at 1371).

As Plaintiffs correctly assert, they presented at trial substantial evidence (which if believed) demonstrated that: (1) Defendant knowingly breached the Confidential License Agreement; (2) Defendant, despite an alleged attempt to cure such breach, nonetheless continued to operate its Baum Hitting Machine using a test protocol prohibited by the Confidential License Agreement; (3) Defendant's actions in this regard were purposely undertaken for the enrichment of Defendant and/or its representatives and employees; and (4) none of Defendant's representatives or employees ever examined the patent in question to determine whether their actions might constitute infringement of such. While the Court may have resolved one or all of these issues differently, such is not a permissible basis to grant

Defendant relief. The evidence presented at trial was sufficient for a reasonable juror to find that Defendant willfully infringed Plaintiff's patent. Defendant's motion for directed verdict on this issue is, therefore, **denied**.

### IX.  Defendant's Motion to Dismiss  (Dkt. #446)

Defendant moves to dismiss any and all claims and counterclaims asserted by Plaintiff Baum relating to United States Patent number 6,640,200 (the '200 patent). In support of its motion, Defendant has submitted a copy of a "Covenant Not to Sue" executed by Plaintiff Baum on March 2, 2009. This document provides that Baum "will not bring any claim, suit or cause of action against the University of Massachusetts ("UMass") for infringement of any claims of U.S. Patent No. 6,640,200 ('the 200 patent)." Plaintiff has not responded to this motion. At hearing, Plaintiff acknowledged signing the Covenant Not to Sue and conceded that Defendant's motion should be granted. Accordingly, Defendant's motion to dismiss is **granted**.

### X.  Plaintiffs' Motion for Entry of Final Judgment and Assessment of Costs, Prejudgment Interest, Treble Damages and Attorneys Fees  (Dkt. #464)

Plaintiffs move for the following relief: (1) prejudgment interest on the damages awarded for breach of the Confidential License Agreement; (2) prejudgment interest on the damages awarded for patent infringement; (3) an award of costs; (4) enhanced damages for Defendant's willful patent infringement; (5) attorneys' fees; (6) post-judgment interest; and (7) an order of final judgment. As discussed in detail below, Plaintiffs' motion is **granted in part and denied in part**.

A.      Enhanced Damages

Federal patent law provides that "[u]pon finding for the claimant. . .the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  A determination of whether a claimant is entitled to enhanced damages is left to the trial court's discretion. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) (superseded on other grounds as recognized in *Hoeschst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1578 (Fed. Cir. 1996)). Enhanced damages "may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith."  *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 923 F.2d 1576, 1579 (Fed. Cir. 1991); *see also*, *Sharper Image Corp. v. Honeywell Intern.*, 222 F.R.D. 621, 628 (N.D. Cal. 2004) (the purpose of awarding enhanced patent damages is "to punish and deter conduct that was more threatening to the patent system than naked acts of infringement").

As previously noted, the jury determined that Defendant willfully infringed Plaintiff's patent.  Such a conclusion "authorizes, but does not require" that the Court award Plaintiff enhanced damages.  *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997).  Rather, courts are instructed to consider the following factors when determining whether an award of enhanced damages is appropriate: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) any remedial action undertaken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006) (quoting *Read*, 970

F.2d at 826-27). A consideration of these factors persuades the Court that enhanced damages are not appropriate in this matter.

Defendant did not copy Plaintiff's ideas or design. Defendant continued to use Plaintiff's hitting machine during the relevant time period pursuant to a not unreasonable belief that such was consistent with the terms of the Confidential License Agreement. Defendant has not engaged in any litigation behavior that warrants an award of enhanced damages. While Defendant is part of a large public university system, current economic circumstances persuade the Court that this factor weighs in Defendant's favor. Despite the extent of Plaintiff's victory in this matter, the Court finds that this was a very close case. While Plaintiff asserts that Defendant engaged in misconduct for several years, it must be remembered that Plaintiff waited a significant period of time before filing suit to enforce his rights. Moreover, immediately after it lost the first trial in this matter on breach of the license agreement, Defendant ceased using its Baum Hitting Machine. This factor, therefore, weighs in Defendant's favor. Defendant attempted to cure its breach of the Confidential License Agreement when the matter was brought to its attention. While the first jury determined that Defendant's attempt was unsuccessful, the Court finds that this factor does not weigh in Plaintiff's favor. Plaintiffs have not persuaded the Court that Defendant's motivation in this matter was to harm Plaintiff. The Court is likewise not persuaded that Defendant attempted to conceal any misconduct.

The Court further finds that Defendant's infringing conduct does not represent the sort of threat to the patent system that merits an award of enhanced damages. This was not a circumstance in which Defendant engaged in the theft of intellectual property to manufacture and market a device to compete in the marketplace with Plaintiffs' hitting machine. Instead, the present dispute is best characterized as a contract dispute involving a patented device and the permissible use thereof. The

Court does not mean to make light of the harm Plaintiffs suffered in this matter, but simply notes that the nature of this case and the harm inflicted on Plaintiffs does not, in the Court's estimation, merit an award of enhanced damages. In sum, the Court finds that an award of enhanced damages in this matter is not appropriate. Plaintiffs' motion for enhanced damages is, therefore, **denied**.

B.      Costs

Plaintiffs assert that they are entitled to an award of $317,949.76 in costs. Specifically, Plaintiffs request that Defendant reimburse them for the following items: (1) fees of the clerk; (2) fees for service of summons and subpoena; (3) fees and disbursements for printing; (4) postage and Federal Express charges; (5) expert witness fees; (6) court reporters/video/depositions; (7) telephone expenses; (8) legal research; (9) mediation/facilitation fees; and (10) travel and lodging. Defendant has only objected to Plaintiffs' request for expert witness fees, legal research expenses, and travel and lodging costs. With respect to the items to which Defendant has not objected, Plaintiffs' motion for costs is granted. As for the remaining items, Plaintiffs' motion is granted in part and denied in part as detailed below.

1.      Expert Witness Fees

Plaintiffs seek to recover $242,733.18 in fees charged by their two expert witnesses. In support of their request for attorneys fees, Plaintiffs rely on both Federal Rule of Civil Procedure 54(d) and 35 U.S.C. 284. With respect to the relationship between these two provisions, the Federal Circuit has indicated that:

> Section 284, like Rule 54(d), gives the district court discretion in awarding costs. . .When considering costs after awarding infringement

damages, a district court proceeds under section 284. The primary
difference between section 284 and Rule 54(d) is that section 284
requires the district court to refer to this court's precedent to determine
the bounds of its discretion.

*Delta-X Corp. v. Baker Hughes Production Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993).

Because this action involved state law contract claims as well as patent claims, it is

necessary to analyze Plaintiffs' requests under both provisions.


        a.      Rule 54(d)

Federal Rule of Civil Procedure 54(d) provides that "[u]nless a federal statute, these rules,

or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the

prevailing party." The costs that may be awarded under Rule 54(d) are specified in 28 U.S.C. § 1920.

*See BDT Products, Inc. v. Lexmark Intern., Inc.*, 405 F.3d 415, 417 (6th Cir. 2005). Section 1920

provides as follows:

> A judge or clerk of any court of the United States may tax as costs the
> following:
>
> (1)      Fees of the clerk and marshal;
>
> (2)      Fees for printed or electronically recorded transcripts
> necessarily obtained for use in the case;
>
> (3)      Fees and disbursements for printing and witnesses;
>
> (4)      Fees for exemplification and the costs of making copies
> of any materials where the copies are necessarily obtained
> for use in the case;
>
> (5)      Docket fees under section 1923 of this title;
>
> (6)      Compensation of court appointed experts, compensation
> of interpreters, and salaries, fees, expenses, and costs of

special interpretation services under section 1828 of this
title.

While subsection (3) above authorizes reimbursement to the prevailing party of "[f]ees for. . .witnesses," the Supreme Court has held that, "absent explicit statutory or contractual authorization" to the contrary, the ability to recover witness fees under § 1920 is limited by 28 U.S.C. § 1821. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 438-45 (1987); *see also, L & W Supply Corp. v. Acuity*, 475 F.3d 737, 740 (6th Cir. 2007) (same). Section 1821 provides, in relevant part, that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." 28 U.S.C. § 1821(b). Plaintiffs have identified no explicit authority indicating that § 1821 is inapplicable in this matter. Trial in this matter lasted 10 days. Accordingly, the Court concludes that Plaintiffs are entitled to recover $400 in expert witness fees for each of their two expert witnesses, for a total of $800 in expert witness fees.

b.    35 U.S.C. § 284

The only Federal Circuit authority that Plaintiffs have identified in support of their request for expert witness fees is *Takeda Chemical Industries, LTD. v. Mylan Laboratories, Inc.*, 549 F.3d 1381 (Fed. Cir. 2008). While the *Takeda* court affirmed the trial court's decision to tax expert witness fees, this authority does not advance Plaintiffs' position. The *Takeda* court did not address whether expert witness fees were recoverable under 35 U.S.C. § 284. Rather, the court observed that "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda*, 549 F.3d at 1391. The court further stated, however, that "[t]he use of this inherent power is reserved for cases with 'a finding of fraud or abuse of the judicial process.'" *Id.* As there has been no finding in this case that Defendant engaged in fraud or

abuse of the judicial process, the *Takeda* decision fails to support Plaintiffs' request. Plaintiffs have not identified any other Federal Circuit authority on the subject. The other authority on the topic cited by Plaintiffs is unpersuasive. Plaintiffs' request for attorneys fees under 35 U.S.C. § 284 is, therefore, denied.

### 2.    Legal Research Expenses and Travel and Lodging Costs

As previously noted, the costs that may be awarded under Rule 54(d) are those specified in 28 U.S.C. § 1920. Because section 1920 does not authorize the recovery of legal research expenses or travel and lodging costs, such are not properly taxable under Rule 54(d). *See Irwin Seating Co. v. International Business Machines Corp.*, 2008 WL 1869055 at *6 (W.D. Mich., Apr. 24, 2008); *Gary Brown & Associates, Inc. v. Ashdon, Inc.*, 268 Fed. Appx. 837, 845-46 (11th Cir., Mar. 7, 2008). Plaintiffs have identified no authority, from the Federal Circuit or any other court, authorizing the recovery of such expenses pursuant to 35 U.S.C. § 284. Accordingly, Plaintiffs' motion for an award of costs to reimburse their legal research expenses and travel and lodging costs is denied.

In conclusion, Plaintiffs' request for costs is granted in part and denied in part. Specifically, Plaintiffs' request is granted as to the following items: (1) fees of the clerk; (2) fees for service of summons and subpoena; (3) fees and disbursements for printing; (4) postage and Federal Express charges; (5) court reporters/video/depositions; (6) telephone expenses; and (7) mediation/facilitation fees. Plaintiffs' request for expert witness fees is granted in part and denied in part as discussed above. Plaintiffs' request for costs relating to legal research and travel and lodging are denied. Accordingly, Plaintiffs are entitled to recover $52,294.33 in costs.

C.	Attorneys' Fees

Federal patent law provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. 285. Plaintiffs request that they be awarded $754,287.93 in attorneys fees.[1]

The determination of whether attorneys fees is warranted is left to the sound discretion of the trial court. *See Evident Corp. v. Church & Dwight Co., Inc.*, 399 F.3d 1310, 1315 (Fed. Cir. 2005). Factors which the Court should consider include: (1) was the infringing conduct was willful or intentional; (2) did the losing party engaged in inequitable conduct before the Patent and Trademark Office; (3) were offensive litigation tactics, including vexatious or unjustified litigation or frivolous filings, were employed; and (4) did the losing party litigate in bad faith. *See Cornell University v. Hewlett-Packard Co.*, 2009 WL 1405208 at *4 (N.D.N.Y., May 15, 2009) (citations omitted); *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005). A finding that the defendant engaged in willful patent infringement supports an award of attorneys fees, but does not obligate the Court to award such. *See Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1308-09 (Fed. Cir. 2005). Furthermore, "exceptional cases," authorizing an award of attorneys fees, "are normally those involving bad faith litigation or those involving inequitable conduct by the patentee in procuring the patent." *Evident*, 399 F.3d at 1315.

A review of the circumstances of this case, persuades the Court that an award of attorneys fees is not appropriate. Defendant has not engaged in inequitable conduct before the Patent and Trademark Office. Defendant has not engaged in offensive, vexatious, unjustified, or frivolous litigation

---

[1] The Court notes that given the length and breadth of this litigation, the amount of fees requested by Plaintiffs' counsel appears very reasonable.

tactics. Defendant has likewise not litigated in bad faith. Furthermore, while the jury found that Defendant willfully infringed Plaintiff's patent, for the reasons discussed in Section A above (concerning Plaintiff's request for enhanced damages), the Court finds that such does not merit an award of attorneys fees. Plaintiffs' request for attorneys fees is, therefore, denied.

### D.    Prejudgment Interest

The jury awarded Plaintiffs $3,016,915 in damages on the breach of contract claim and $3,100,000 in damages for patent infringement. As Plaintiffs acknowledge, however, they are entitled to receive only the larger of the two amounts as damages for both the breach of contract and patent infringement. Plaintiffs now seek prejudgment interest on the damages awarded in this matter.

As detailed below, the Court finds that Plaintiffs are entitled to prejudgment interest in this matter. However, just as Plaintiffs cannot recover double damages, they cannot recover prejudgment interest on amounts to which they are not entitled. Stated differently, Plaintiffs are not entitled to recover prejudgment interest on the total amount awarded by the jury ($6,116,915), but instead may only recover prejudgment interest on the $3,100,000 to which they are entitled. Of this amount, for purposes of calculating prejudgment interest, $3,016,915 is attributable to Plaintiffs' breach of contract claim and $83,085 is attributable to Plaintiff's patent infringement claims.

#### 1.    Contract Damages

Plaintiffs' breach of contract claim arose under Michigan law and the Court heard this claim pursuant to its supplemental jurisdiction. *See* 28 U.S.C. § 1367. As the Sixth Circuit has recognized, "[w]here state law claims come before a federal court on supplemental jurisdiction, the

award of prejudgment interest rests on state law." *Mills v. River Terminal Railway Co.*, 276 F.3d 222, 228 (6th Cir. 2002).

Michigan law provides that "[i]nterest is allowed on a money judgment recovered in a civil action, as provided in" Michigan Compiled Laws § 600.6013. Michigan courts have indicated that "[a]n award of interest is mandatory in all cases in which [Mich. Comp. Laws § 600.6013] applies." *Quinn v. City of Grosse Pointe Farms*, 2005 WL 159796 at *3 (Mich. Ct. App., Jan. 25, 2005) (citing *Rodriguez v. State Farm Ins. Group of Cos.*, 651 N.W.2d 428 (Mich. Ct. App. 2002)). The statute in question applies in this instance. *See* Mich. Comp. Laws § 600.6013(8). Pursuant to this provision, prejudgment interest is awarded "from the date of filing the complaint" and is "calculated on the entire amount of the money judgment, including attorney fees and other costs." Mich. Comp. Laws § 600.6013(8). Interest under this subsection is "calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually." Mich. Comp. Laws § 600.6013(8).

As previously noted, Plaintiffs were awarded $3,016,915 in damages on the breach of contract claim. As discussed above, Plaintiffs are not entitled to attorneys fees, but are entitled to recover $52,294.33 in costs. Accordingly, pursuant to Michigan law, Plaintiffs are entitled to recover prejudgment interest on $3,069,209.33.


2.      Patent Damages

As noted above, for purposes of calculating prejudgment interest, Plaintiff was awarded $83,085 on his patent infringement claims. Plaintiff seeks prejudgment interest on this amount.

Federal patent law provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The Supreme Court has held that "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983).

Defendant asserts that because Plaintiffs "unnecessarily delayed" in bringing the present action, an award of prejudgment interest is inappropriate. In support of this argument, Defendant relies on *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001). In *Crystal Semiconductor*, a jury found that TriTech and OPTi had willfully infringed Crystal's patents and awarded Crystal more than 47 million dollars in damages. *Id.* at 1342-45. The trial court subsequently awarded additional damages (based on the jury's finding of willful infringement), but denied Crystal's request for prejudgment interest. *Id.* at 1345. The trial court denied the request for prejudgment interest on the ground that Crystal "delayed several years in filing suit" and "engaged in litigation tactics that delayed the disposition of this lawsuit." *Id.* at 1361. On appeal, the Federal Circuit affirmed the trial court's decision to deny prejudgment interest. *Id.* at 1362. Defendant asserts that Plaintiffs' request for prejudgment interest in this matter must be denied because "[t]he same facts are present here." The Court disagrees.

As the *Crystal Semiconductor* court observed, in 1994-95 Crystal sent letters to 30-40 companies regarding its patents and the potential infringement thereof. However, Crystal failed to send any such letters to TriTech and OPTi, despite having concluded that TriTech and OPTi were, in fact, infringing their patents. Instead, Crystal waited two years to bring suit against TriTech and OPTi,

causing "the damages owed by TriTech and OPTi to escalate." The court found that "[t]he record contains sufficient evidence for the district court to determine that Crystal's delay was self-serving and resulted in prejudice to the defendants." *Id.* While a lengthy period passed between the time Plaintiffs learned of Defendant's misconduct and the date the present action was initiated, there is no evidence that this delay was an attempt by Plaintiffs to enhance their damages and/or prejudice Defendant. The record instead reveals that rather than immediately initiate litigation against Defendant, Plaintiffs attempted to resolve this matter through other means. The Court declines Defendant's invitation to punish such attempts. The Court further notes that there is no evidence that Plaintiffs have engaged in litigation tactics designed to delay resolution of this matter. The Court finds, therefore, that there exists no justification for denying Plaintiff's request for prejudgment interest.

Having determined that Plaintiffs are entitled to prejudgment interest pursuant to 35 U.S.C. § 284, the Court must determine the date on which any award of prejudgment interest is to begin. Plaintiffs assert that prejudgment interest must be calculated from January 31, 2000, the date on which Defendant first engaged in infringing conduct. Defendant asserts in its brief that Plaintiffs are incorrect and that "if any prejudgment interest is due, Plaintiffs should be required to calculate interest on damages *as they accrued*." When questioned about this matter at hearing, Defendant insisted that if Plaintiffs were entitled to prejudgment interest, such would have to be calculated on an ongoing basis as the damages in question accrued.

In other words, Defendant takes the position that prejudgment interest must be calculated by determining the amount of damages attributable to each of the several hundred acts of infringement in this case and then separately calculating the interest due from the date of each infringing act. The absurdity of this position is obvious. First, the jury did not allocate patent damages by reference to each

individual act of infringement. Moreover, Defendant's position would require Plaintiffs (or the Court) to perform literally hundreds (if not thousands) of calculations. Defendant's argument is supported by neither common sense nor legal authority. The authority Defendant cites in support of its position, *Oiness v. Walgreen Co.*, 88 F.3d 1025 (Fed. Cir. 1996), is easily distinguishable. In *Oiness*, the court indicated that prejudgment interest is not recoverable on awards of *future* damages. As Plaintiff neither sought nor received future damages in this matter, the *Oiness* decision is of no relevance on this particular question.

As courts recognize, "prejudgment interest ordinarily is awarded from the date of infringement until entry of judgment." *Cornell University*, 2009 WL 1405208 at *4 (citing *Nickson Industries v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988)). Accordingly, Plaintiffs are entitled to prejudgment interest on $83,085 (the amount of the damages award attributable to Plaintiff's patent infringement claims) calculated from January 31, 2000, through the date of final judgment.

The Court must also determine the rate at which such interest is to be calculated. The Court "is afforded wide latitude in the selection of interest rates." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *see also*, *Rocket Jewelry Box, Inc. v. Quality International Packaging, Inc.*, 403 F.Supp.2d 288, 291 (S.D.N.Y. 2005) (the Court is "afforded wide latitude and discretion in its selection of the appropriate interest rate to be applied"). In selecting an appropriate interest rate, however, the Court must be mindful that "[p]rejudgment interest has no punitive, but only compensatory, purposes." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). Prejudgment interest "serves to make the patent owner whole, for damages properly include the foregoing use of money of which the patentee was wrongly deprived." *Rocket Jewelry Box*, 403 F.Supp.2d at 290.

Plaintiffs request that an award of prejudgment interest be based on the federal prime rate, compounded annually. According to Plaintiff's calculations, the federal prime rate (for the periods relevant here) ranged from 3.25 percent to 9.50 percent. (Dkt. #464, App. C). Defendant counters that "nothing justifies awarding [Plaintiff] interest at a rate higher than the Treasury bill rate." Plaintiffs have submitted no evidence that as a result of Defendant's infringing conduct they were required to borrow money that they would otherwise not have been required to borrow. In such a circumstance, the Court finds that the Treasury bill rate is the appropriate interest rate to apply. *See Laitram*, 115 F.3d at 955.

While the Court finds the Treasury bill rate to be the appropriate measure of interest in this matter, it must still be determined precisely which Treasury bill rate to apply. This is not insignificant as there exists a significant difference between the interest rate paid on a 1-month Treasury bill and that paid on a 10-year Treasury bill. Defendant has failed to identify for the Court what the Treasury bill rate was for the relevant time periods. Defendant has likewise failed to indicate which particular Treasury bill rate it believes to be appropriate in this matter.

Considering that more than nine years transpired from the date of infringement to the entry of final judgment, the Court finds that the interest rate applicable to the 10-year Treasury bill is an appropriate starting point for calculating prejudgment interest in this matter. According to the Court's research, from January 31, 2000 through the present date, the interest rate on a 10-year Treasury bill ranged from a low of 2.08 percent to a high of 6.68 percent. *See* United States Department of the Treasury, available at http://www.ustreas.gov (last visited on July 10, 2009). For ease of calculation, the Court, in the exercise of its discretion, finds that an interest rate of 5.0 percent is fair and appropriate.

In sum, Plaintiffs, pursuant to 35 U.S.C. § 284, are entitled to recover prejudgment interest on $83,085, at a rate of 5 percent interest compounded annually, calculated from January 31, 2000, through the date of final judgment.

E.      Post-Judgment Interest

Plaintiffs also assert that they are entitled to post-judgment interest. Defendant has not opposed this request. Federal law provides for the award of post-judgment interest, "calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). While state law governs the propriety of prejudgment interest on damages awarded on state law claims, federal law controls the applicability of post-judgment interest as to such damages awards. *See Estate of Riddle v. Southern Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005). Plaintiff is, therefore, entitled to post-judgment interest in this matter, calculated in the manner articulated in 28 U.S.C. § 1961(a).

**CONCLUSION**

As discussed herein, Defendant's Motion for Summary Judgment, (dkt. #324), is **denied**; Defendant's Motion for Summary Judgment, (dkt. #327), is **granted**; Plaintiffs' Motions in Limine, (dkt. #347), is **granted**; Plaintiffs' Motions in Limine, (dkt. #348), is **denied**; Defendant's Motions in Limine, (dkt. #351), is **denied**; Defendant's Motions in Limine, (dkt. #353), is **granted in part and denied in part**; Defendant's Motions in Limine, (dkt. #359), is **granted**; Defendant's Motion for Verdict on Special Questions, (dkt. #376), is **granted in part and denied in part**; Defendant's Motion for Exclusion, (dkt. #384), is **granted**; Plaintiffs' Motion to Try Representative Claims, (dkt. #395), is **granted**; Plaintiffs' Motion for Directed Verdict, (dkt. #428), is **denied as moot**; Defendant's Motions

for Directed Verdict, (dkt. #436), is **denied**; Defendant's Motions for Directed Verdict, (dkt. #437), is **denied**; Defendant's Motion to Dismiss, (dkt. #446), is **granted**; and Plaintiffs' Motion for Entry of Final Judgment and Assessment of Costs, Prejudgment Interest, Treble Damages and Attorneys Fees, (dkt. #464), is **granted in part and denied in part**.

IT IS SO ORDERED.

Date: July 14, 2009                     /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge